**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
            Respondent,                 )
                                        )
      v.                                )    CRIMINAL NO. 03-10292-PBS
                                        )
TIMOTHY J. DUVAL,                       )
                                        )
            Petitioner.                 )
_____)

**MEMORANDUM AND ORDER**

July 17, 2013

Saris, C.J.

**I. Introduction**

Petitioner, Timothy J. Duval, brings this motion pursuant to
28 U.S.C. § 2255(a) claiming that his criminal sentence as an
armed career criminal was excessive and in violation of due
process. Specifically, he claims that after an intervening change
in law from the Supreme Court and the First Circuit, one of the
predicate offenses used to apply an enhanced sentence was not a
"violent felony" under the Armed Career Criminal Act ("ACCA"). 18
U.S.C. § 924. This motion raises many complex and novel issues of
habeas law. After hearing, Petitioner's request for relief
(Docket No. 185) is **ALLOWED**.

## II.  PROCEDURAL HISTORY

On October 27, 2004, a single count superseding indictment was returned by a federal grand jury charging Timothy J. Duval and Michael R. Doucette as felons-in-possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). A jury trial presided over by the Honorable Reginald C. Lindsay commenced on February 7, 2005. On February 17, 2005, the jury returned verdicts of guilty as to each defendant and the case was continued for sentencing. At Duval's sentencing, the probation office recommended a sentencing enhancement based upon application of the Armed Career Criminal Act ("ACCA"). Under the ACCA:

> [A] person who violates section 922(g) of this title and has three previous convictions . . . for <u>a violent felony</u> or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years.

18 U.S.C. § 924(e)(1) (emphasis added).

Counsel objected to the Pre-Sentence Report ("PSR") recommendation, stating that the "ACCA sentencing enhancement was not applicable because the defendant lacks the three prior felony or serious drug convictions based on the information contained in the PSR." Prior to the felon-in-possession conviction, Duval had been convicted of three other felonies. These included two burglaries and an assault under Maine state law, 17-A M.R.S. § 207(1).

2

Defendant filed a Memorandum in Aid of Sentencing (Docket No. 144), which disputed that "the assault conviction [under § 207] is a violent felony." Under the ACCA:

> [T]he term violent felony means any crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . .

18 U.S.C. § 924(e)(2)(B).[1] With respect to the assault conviction, Duval conceded that he had received a sentence in excess of one year for the underlying assault. However, Duval pointed out that while Maine does not classify crimes as misdemeanors or felonies, a violation of § 207 constitutes a Class D crime and is punishable by imprisonment for less than one year. 17-A M.R.S. § 1252(2)(D). The increased sentence was due to 17-A M.R.S. § 1252(4-A), which provides for an enhancement of the applicable "sentencing class" where the state has shown that a defendant has two or more prior convictions for similar offenses. Despite his enhanced sentence, Duval argued that the underlying assault was not punishable for a term exceeding one year and as such did not constitute a predicate offense under the ACCA.

---

[1] Clause (i) has been referred to as the "force clause," while the portion of clause (ii) following the enumerated offenses is known as the "residual clause." United States v. Holloway, 630 F.3d 252, 256 (1st Cir. 2011).

The trial court received a copy of the charging document and the statute describing the assault. At sentencing, the court concluded that because Defendant pleaded guilty to an offense punishable for a period of incarceration greater than a year, the assault charge was, therefore, a violent felony and should be counted as one of three predicate offenses under the ACCA. Accordingly, on June 2, 2005, Duval was sentenced to a mandatory minimum term of 180 months imprisonment, followed by a five year term of supervised release.

On June 7, 2005, Duval filed a timely Notice of Appeal. In addition to his argument that the underlying assault was not punishable by more than a year of imprisonment, Duval argued that the Maine assault offense should not have been categorized as "violent." Under 17-A M.R.S. § 207(1), "[a] person is guilty of assault if the person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person." Based on the charging documents, Duval argued that the underlying assault could have been based upon "reckless" conduct or upon "offensive contact" neither of which would establish a predicate "violent felony" for ACCA enhancement purposes. The First Circuit recognized that the case law to determine whether assault is a violent or non-violent felony was "in some disarray." United States v. Duval, 496 F.3d 64, 85 n.7 (1st Cir. 2007). However, given prior circuit precedent the court was bound to hold "that even 'offensive contact' constitutes a violent

4

felony under Maine's assault and battery statute." Id. at 85
(citing United States v. Nason, 269 F.3d 10, 21 (1st Cir. 2001)).
Consequently, the First Circuit affirmed Duval's conviction and
sentence on August 7, 2007. Id., cert. denied, 553 U.S. 1067 (May
27, 2008) (No. 07-7741).

On September 27, 2011, Duval filed the present petition
pursuant to 28 U.S.C. § 2255, arguing that the mandatory fifteen
year sentence he received should be vacated in light of the First
Circuit's decision in United States v. Holloway, 630 F.3d 252
(1st. Cir. 2011). On October 13, 2011 Petitioner requested
counsel to represent him on this habeas petition (Docket No.
188). The court granted the Petitioner's request and appointed
counsel.

### III.  STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a defendant may seek post-conviction
relief from his sentence in four instances: if the sentence "(1)
was imposed in violation of the Constitution, or (2) was imposed
by a court that lacked jurisdiction, or (3) exceeded the
statutory maximum, or (4) was otherwise subject to collateral
attack." David v. United States, 134 F.3d 470, 474 (1st Cir.
1998) (citing Hill v. United States, 368 U.S. 424, 426-27
(1962)). "Section 2255 is not a surrogate for a direct appeal."
David, 134 F.3d at 474. Unless the claim alleges a lack of
jurisdiction or constitutional error, the sentence must result in

"a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (citing Hill, 368 U.S. at 428). The miscarriage of justice claim may have its source in the Constitution or in the laws of the United States. Davis v. United States, 417 U.S. 333, 346 (1974). Where a conviction and punishment are for an act that the law does not make criminal, "such a circumstance inherently results in a complete miscarriage of justice and present[s] exceptional circumstances that justify collateral relief under § 2255." Id. at 347 (quotations omitted). A viable habeas claim exists under § 2255 where a conviction is rendered invalid by an "intervening change in the law." Id. at 342.

## IV.  DISCUSSION

### A. Determination of "Violent Felony" Under the ACCA

Petitioner argues that his 180-month sentence was excessive and unconstitutional because there was insufficient evidence to demonstrate that his prior assault conviction was a "violent felony." If the assault is not a "violent felony" then he does not possess the required three predicate offenses to qualify for the ACCA sentencing enhancement. The Government argues that, even though Maine's assault statute contains both violent and non-violent variants, the Presentence Report's ("PSR") description of the offense, to which the Petitioner did not object, establishes that Duval's assault was a "violent felony."

6

When determining whether a defendant's prior offense
qualifies as a violent felony under the ACCA, the sentencing
court must take a categorical approach. <u>Taylor v. United States</u>,
495 U.S. 575, 600 (1990). Under this approach, the court
considers whether the offense of conviction, as legally defined,
qualifies as an ACCA violent felony. <u>Id.</u> "In implementing this
[categorical] approach, the first step is to identify the offense
of conviction." <u>United States v. Giggey</u>, 589 F.3d 38, 41 (1st
Cir. 2009). In doing so, the trial court may look "only to the
fact of conviction and the statutory definition of the prior
offense." <u>Taylor</u>, 495 U.S. at 602 . Thus, "[i]n determining
whether this crime is a violent felony, we consider the offense
generically, that is to say, we examine it in terms of how the
law defines the offense and not in terms of how an individual
offender might have committed it on a particular occasion." <u>Begay
v. United States</u>, 553 U.S. 137, 141 (2008).

This can prove challenging when a defendant, such as Duval,
is convicted under a statute that covers multiple offenses.
<u>Giggey</u>, 589 F.3d at 41. In such a case, a court may look to a
restricted set of sources, such as an indictment, a plea
agreement or colloquy, or jury instructions, to ascertain which
of the multiple offenses served as the offense of conviction.
<u>Shepard v. United States</u>, 544 U.S. 13, 26 (2005); <u>Giggey</u>, 589
F.3d at 41. The list of documents allowed by <u>Shepard</u> is not
exhaustive. <u>See Shepard</u>, 544 U.S. at 26 (allowing "some

comparable judicial record of [the admitted elements of the generic offense]"). This process is known as the "modified categorical approach," recently reaffirmed by the Supreme Court in cases "when a divisible statute . . . renders opaque which element played a part in the defendant's conviction." Descamps v. United States, 133 S.Ct. 2276 (2013). The Court reiterated that the "central feature" of the modified categorical approach is "a focus on the elements, rather than the facts, of a crime." Id. The purpose of the review is "not to determine what the defendant and state judge must have understood as the factual basis of the prior plea" or conviction. Id. (quotations omitted). Instead, "[b]y reviewing the extra-statutory materials . . . courts could discover 'which statutory phrase' contained within a statute listing 'several different' crimes, 'covered a prior conviction.'" Id. (quoting Nijhawan v. Holder, 557 U.S. 29, 41 (2009)). Accordingly, if Shepard-approved documents do not clearly identify the specific offense of conviction, "the conviction may only serve as a predicate offense if each of the possible offenses of conviction would qualify as a violent felony." Holloway, 630 F.3d at 257. "Under these conditions, if at least one of the possible offenses of conviction would not qualify as a violent felony, the conviction is unusable for ACCA purposes. In such a case, it is impossible to tell whether the defendant was convicted of a violent or non-violent offense." Id.

At the time of Duval's sentencing, First Circuit precedent held that all "variants of assault regulated under Maine's general-purpose assault statute necessarily involve the use of physical force," and, so, qualified as violent felonies for the purposes of the ACCA. Nason, 269 F.3d at 21. This included "offensive physical contact." However, the Supreme Court subsequently examined a Florida battery statute covering multiple variants of conduct, including "actually and intentionally touching" which the state court defined as "any intentional contact no matter how slight." Johnson v. United States, 559 U.S. 133, 138 (2010). The Court held that for a conviction to qualify as a "violent felony" under the "force clause" of the ACCA, the government must demonstrate "a use of physical force" that is "capable of causing physical pain or injury to another person." Johnson, 559 U.S. at 140. To determine categorically whether a state offense falls within this ACCA definition, federal courts are bound by state court interpretations of state law. Johnson, 559 U.S. at 137-38.

In light of Johnson, the First Circuit subsequently held that, where an offense of conviction encompasses both violent and non-violent offenses, the use of boilerplate language in charging documents, such as "did assault and beat," was not sufficient to demonstrate a "violent felony" for the purposes of sentencing. United States v. Holloway, 630 F.3d 252, 259-60 (1st Cir. 2011)

(construing Massachusetts law). It overturned in part United States v. Mangos, 134 F.3d 460 (1st Cir. 1998).[2]

Citing the intervening change in law wrought by Johnson and Holloway, Duval renews the argument that his 2001 offense should not have been categorized as a "violent felony," since his assault was not clearly charged as a violent variant of the Maine assault statute.

**B. Assault Under Maine Law**

Under Maine law, a person may be convicted of assault for "offensive physical contact," which has been defined as "bodily contact or unlawful touching done in such a manner as would reasonably be expected to violate the person or dignity of the victim. It's something less than bodily injury . . . but requires more than a mere touching of another." State v. Pozzuoli, 693 A.2d 745, 747 (Me. 1997) (emphasis added). "Offensive physical contact" is not limited to direct touchings, but also can be effected by indirect touchings, through contact with items "intimately connected" to the body, such as clothing or a cane, customarily regarded as part and parcel of an individual's

---

[2] Although Mangos considered what charging language sufficiently demonstrates a predicate conviction for a "crime of violence" under the career offender provision of the U.S. Sentencing Guidelines, the terms "crime of violence" and "violent felony" under the ACCA are nearly identical in meaning. United States v. Willings, 588 F.3d 56, 58 n.2 (1st Cir. 2009). Thus, "decisions construing one term inform the construction of the other." Holloway, 630 F.3d at 254 n.10 (quoting Willings, 588 F.3d at 58 n.2).

"person." State v. Rembert, 658 A.2d 656, 658 (Me. 1995). As such, under Maine law, "offensive physical contact" can include "force capable of causing physical pain or injury to another person" as required by Johnson, but does not necessarily involve such force. Compare State v. Bushey, 425 A.2d 1343, 1344-45 (Me. 1981) (upholding assault conviction as "offensive physical contact" where defendant hit officer in chest with fists several times but caused no injury) with State v. Filler, 3 A.3d 365, 373 (Me. 2010) (upholding conviction for assault where defendant called victim by degrading names and threw two cups of water in her face). If the Court was limited to the statutory language alone, Duval's 2001 conviction for assault would not qualify as a violent felony under the ACCA.

Nonetheless, the Government argues that Petitioner's PSR establishes that the assault charged was in fact a "violent felony" and not merely "offensive physical contact." The PSR description is based on a local police report, which a court generally may not rely upon in determining the defendant's offense of conviction. United States v. Davis, 676 F.3d 3, 8 (1st Cir. 2012) (citing Shepard, 544 U.S. at 21-23). However, the First Circuit has indicated approval for "the use of a PSR's summary of police reports to support the characterization of a predicate offense when the defendant did not object to the PSR." Davis, 676 F.3d at 10 n.6 (citing United States v. Jimenez, 512 F.3d 1, 7 (1st Cir. 2007)) (finding no plain error for district

court to use PSR description of assault charge to apply career
offender enhancement); see also United States v. Pelletier, 469
F.3d 194, 202-03 (1st Cir. 2006) (noting for the purposes of
sentence enhancement,"in the absence of any objection, a
statement in a presentence report is sufficient to prove the fact
proposed." (citing United States v. Arrieta-Buendia, 372 F.3d
953, 955-56 (8th Cir. 2004))).

Duval did object on Shepard grounds to the use of a police
report in characterizing three other offenses in the PSR. (PSR
Objection ## 6, 8, 10). He also objected generally to Probation's
application of the ACCA because he lacked the three prior violent
felonies. (PSR Objection ## 4, 7). Duval did not specifically
object to the characterization of the 2001 assault offense based
on the police report description. He noted that he was awaiting a
copy of the charging document to determine if the assault
conviction was a violent felony under the ACCA. (PSR Objection #
7). Duval eventually challenged the assault conviction at
sentencing, arguing that it was a misdemeanor, not a felony,
because it was generally punishable for less than a year.
However, he made no other challenge to the crime's
characterization until his direct appeal to the First Circuit.
See Duval, 496 F.3d at 84.

Because Duval did not object to the PSR's characterization
of his assault, the key inquiry is whether the language of the
PSR demonstrates that Duval was charged with an assault that used

12

"force capable of causing physical pain or injury to another person," Johnson, 130 S.Ct. at 1271, or whether it is merely generic language incapable of delineating violent from non-violent offenses, Holloway, 630 F.3d at 260. The PSR describes Duval's assault as follows:

> Timothy Duval . . . assaulted a male victim. It was reported that Duval attempted to enter an apartment at the above-mentioned address, but was told by the building manager (victim) that he could not enter the apartment. Duval assaulted the victim once, walked away, and returned and assaulted the victim a second time.

This language is more than generic charging language. Duval's decision to assault the victim a second time after walking away establishes an intentional, as opposed to reckless, *mens rea*. However, the PSR does not precisely describe the details of the encounter, making it impossible to determine whether the confrontation caused bodily injury or merely offensive physical contact. Indeed, the legal definition of the term "assault" contemplates both possibilities. Since neither the statutory language nor the language of the PSR indicate whether Duval's charged assault involved "bodily injury" or "offensive physical contact" under the divisible Maine assault statute, this Court finds the 2001 assault does not qualify as a "violent felony" under the ACCA.

## C. Miscarriage of Justice

Petitioner claims that his sentence was imposed beyond the statutory maximum for his felon-in-possession offense and, so, is

13

in violation of the Due Process Clause of the Constitution, and is otherwise subject to collateral attack as a fundamental miscarriage of justice. Where a defendant is punished "for an act that the law does not make criminal . . . such a circumstance inherently results in a completely miscarriage of justice." Davis v. United States, 417 U.S. 333, 346-47 (1974) (quotations omitted). Generally, a sentencing court's erroneous application of sentencing guidelines is not a "miscarriage of justice," cognizable on a habeas review. See Knight v. United States, 37 F.3d 769, 773-74 (1st Cir. 1994) (holding that misapplication of Sentencing Guidelines is generally not a proper claim under § 2255); Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011) (collecting cases). The Tenth Circuit has held that it is a "miscarriage of justice" when a prisoner has been wrongly sentenced under the binding provisions of the ACCA such that his sentence exceeds the statutory maximum of his instant offense.[3]

---

[3] Several unpublished decisions allowed collateral relief after the Supreme Court modified the definitions of "violent felony," changing the status of a petitioner's prior predicate conviction for sentencing purposes. See Hunter v. United States, 2011 U.S. App. LEXIS 25428 (11th Cir. December 21, 2011) (remanding petition to district court to determine constitutionality of ACCA sentence in light of Begay v. United States, 553 U.S. 137 (2008)); United States v. Williams, 396 Fed. Appx. 951 (4th Cir. 2010) (vacating sentence under § 2255 because change in law from Chambers v. United States, 555 U.S. 122 (2009) invalidated predicate conviction); Kirk v. United States, 481 Fed. Appx. 249 (6th Cir. 2012) (vacating sentence under § 2255 because aggravated-vehicular-assault conviction did not qualify as a "violent felony" under the ACCA residual clause after intervening case law, Begay, 553 U.S. at 137.).

United States v. Shipp, 589 F.3d 1084, 1091 (10th Cir. 2009)
(vacating sentence under § 2255 because failure to report escape
predicate conviction did not qualify as a "violent felony" under
the ACCA residual clause after intervening case law, Chambers v.
United States, 555 U.S. 122 (2009)). The Circuits have split on
whether to apply a miscarriage of justice analysis on habeas
review where a conviction does not qualify as a "crime of
violence" under the career offender provision of the sentencing
guidelines. Compare Narvaez v. United States, 674 F.3d 621, 629
(7th Cir. 2011) (vacating sentence below statutory maximum under
§ 2255 because conviction did not qualify as "crime of violence"
for career offender enhancement, mandatory at the time of
sentencing) with Sun Bear, 644 F.3d at 705 (holding that
misapplication of career offender enhancement in light of
intervening case law not a "miscarriage of justice" because
guideline range still within statutory maximum authorized).

Duval was sentenced as a felon-in-possession. A person found
guilty of violating 18 U.S.C. § 922(g)(1) "shall be . . .
imprisoned not more than 10 years." Petitioner's 180-month
sentence was five years longer than the statutory maximum
allowed. Because his 2001 assault conviction no longer qualifies
as a violent felony, Duval is not an armed career criminal
subject to a sentencing enhancement, and, so, his punishment is
one that the law cannot impose. Thus, Petitioner has demonstrated
a complete miscarriage of justice if he has otherwise met the

15

steep hurdles posed by § 2255. The Government, though, raises several serious substantive and procedural issues that may serve as a bar to habeas relief.  The Court addresses each one separately.

## D. Procedural Default

The Government argues that Petitioner is procedurally defaulted from raising this fundamental miscarriage of justice claim, since he did not specifically object to the characterization of his assault as a "violent felony" until his appeal.[4] "Collateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by fail[ing] to raise [the] claim in a timely manner at trial or on [direct] appeal." Bucci v. United States, 662 F.3d 18, 27 (1st Cir. 2011) (internal quotations omitted) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)). Duval argues that his claim is not procedurally defaulted because he objected to the Maine assault charge as a basis for the ACCA sentencing enhancement, both in the PSR and at sentencing. In response to the PSR, Duval objected that the "Armed Career Criminal Act (ACCA) sentencing enhancement is not applicable because the defendant lacks the three prior violent felony or serious drug convictions based on the information contained in

---

[4] Notably, the Government did not challenge Petitioner's claim on procedural default grounds until asked to brief the matter by the Court. Prior to the Government's last supplemental filing (Docket No. 208), the argument was not presented.

the Presentence Report." Addendum to Def.'s 2255 Mem., 3 (Docket No. 198). Additionally, in his Sentencing Memorandum (Docket No. 144), Defendant stated that he "disputes that the assault conviction at ¶ 42 is a violent felony."

However, Duval did not raise the specific argument that his Maine assault conviction was mischaracterized as violent. At the sentencing stage, he only argued that the assault conviction was a misdemeanor rather than a felony. Indeed, the First Circuit noted that Duval argued that his assault was not a violent crime "for the first time on appeal." Duval, 496 F.3d at 84. And while Duval did raise the argument on direct appeal, "a § 2255 petition is procedurally defaulted if the defendant failed to object to the alleged error at trial, even if the defendant subsequently raised the issue on direct appeal under 'plain error' review." Bucci, 662 F.3d at 29. Here, the First Circuit addressed the merits of Mr. Duval's claim under the plain error standard.

"If a petitioner's claim has procedurally defaulted, collateral review under § 2255 will be available only if the petitioner can show both (1) 'cause' for having procedurally defaulted his claim; and (2) 'actual prejudice' resulting from the alleged error." Bucci, 662 F.3d at 27 (quoting Frady, 456 U.S. at 167-68). A procedural default may also be excused by a showing of actual innocence. Bousley v. United States, 523 U.S. 614, 622 (1998). A claim of actual innocence may only be addressed if a petitioner fails to overcome a procedural default

17

through a showing of cause and prejudice. <u>Dretke v. Haley</u>, 541 U.S. 386, 393-94 (2004) (holding that "a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default.").

Duval argues that if the claim is procedurally defaulted, his default is excused by ineffective assistance of counsel. "The Supreme Court has recognized that ineffective assistance of counsel can constitute cause sufficient to excuse a procedural default, but only if the representation was 'constitutionally ineffective under the standard established in <u>Strickland</u>.'" <u>Bucci</u>, 662 F.3d at 29 (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)). Under <u>Strickland v. Washington</u>, the defense counsel's performance will be found constitutionally ineffective if the defendant can show (a) that his counsel's performance was deficient; and (b) that he was prejudiced as a result of the deficient performance. 466 U.S. 668, 687 (1984). To establish deficient performance, the defendant must show that his counsel's actions "fell below an objective standard of reasonableness." <u>Id.</u> at 688.

Duval claims that since counsel objected to his Maine assault as a misdemeanor not a felony, there was no sound trial strategy for failing to object on the additional ground that the assault was non-violent. See <u>id.</u> at 689 ("[D]efendant must

overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (quotations omitted). However, at the time of Duval's sentencing, circuit precedent, Nason, 269 F.3d at 21, defined all forms of Maine assault as violent felonies under the ACCA, and "as a general matter failure to anticipate a new rule of law is not deficient performance." United States v. Sampson, 820 F. Supp. 2d 202, 223 (D. Mass. 2011) (collecting cases). See also Powell v. United States, 430 F.3d 490, 491 (1st Cir. 2005) ("[T]he case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law.") (quoting Kornahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995)).  This is particularly true when binding precedent in the circuit dictates the opposite outcome. See Powell, 430 F.3d at 491 ("It is thus far from clear that defense counsel would dip below the bench mark for effective advocacy by failing to raise an objection to the use of Petitioner's . . . conviction as an ACCA sentencing predicate, even if the objection would later be determined to have merit.").

"Advocating changes in recent precedent may occasionally be required of competent counsel, but it would take unusual circumstances." Id. at 491. See also Nichols v. United States, 501 F.3d 542, 545 (6th Cir. 2007) (noting ineffective assistance of counsel "can arise when counsel fail[s] to raise an issue whose resolution is clearly foreshadowed by existing decisions."

(internal quotations omitted)); <u>United States v. Ardley</u>, 273 F.3d 991, 993 (11th Cir. 2001) ("we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel"). The failure to foresee <u>Johnson</u> and <u>Holloway</u> does not rise to the level of ineffective assistance of counsel since it was settled precedent that <u>Mangos</u> and <u>Nason</u> precluded the defense.

Under another line of habeas doctrine, not discussed directly by the parties, "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . would constitute cause under [the procedural default] standard." <u>Murray</u>, 477 U.S. at 488. "A claim that is so novel that its legal basis is not reasonably available to counsel may constitute cause for a procedural default." <u>Bousley</u>, 523 U.S. at 622 (internal quotations omitted); <u>see also</u> <u>Reed v. Ross</u>, 468 U.S. 1, 14-16 (1984) (involving a constitutional claim). Generally, adverse precedent within a jurisdiction is not enough to constitute cause. <u>See</u> <u>Bousley</u> 523 U.S. at 623 ("[F]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.") (internal quotations omitted); <u>Simpson v. Matesanz</u>, 175 F.3d 200, 211 (1st Cir. 1999) ("<u>Bousley</u> made it clear that if an issue has been decided adversely to an argument in the relevant jurisdiction, and the

argument is not made for that reason, that is insufficient reason
to constitute cause for a procedural default.").

So, when is a claim so novel that it excuses a procedural
default if adverse precedent is not by itself enough? Prior to
Bousley, the Supreme Court indicated that a new Court decision
representing "a clear break with the past" might constitute a
novel issue excusing procedural default. Reed, 468 U.S. at 17.
Specifically, when a Supreme Court decision overturns "a
longstanding and widespread practice to which th[e] Court has not
spoken, but which a near-unanimous body of lower court authority
has expressly approved . . . there will almost certainly have
been no reasonable basis upon which an attorney previously could
have urged a state court to adopt the position." Id. Some courts
have questioned Reed's reach after Bousley. See Simpson, 175 F.3d
at 212; United States v. Moss, 252 F.3d 993, 1002-03 (8th Cir.
2001). However, the Supreme Court in Bousley explicitly relied
upon Reed, and there is an important distinction between merely
adverse precedent in the relevant district, Simpson, 175 F.3d at
211, and "longstanding and widespread practice," Reed, 468 U.S.
at 17.

Under circumstances similar to this case, one court
concluded that an intervening change in the definition of a
"violent felony" provided cause sufficient to excuse a procedural
default, since at the time of sentencing the "petitioner had no
reasonable basis in existing law for the claim that ACCA did not

count his A&B conviction." <u>Samnang Am v. United States</u>, 2013 U.S.

Dist. LEXIS 68742, at *9-10 (D. Mass. May 14, 2013) (Zobel, J.).

At the time of Duval's sentencing, it was well-settled law in

this circuit that a "touching" variant of common law battery fell

within the meaning of use of "physical force" under the ACCA and

similar statutes. <u>See</u> <u>Nason</u>, 269 F.3d at 21; <u>Mangos</u>, 134 F.3d at

464. To be sure, other circuits were split, but each decision was

dependent on the wording of a particular state statute. <u>Compare</u>

<u>United States v. Griffith</u>, 455 F.3d 1339, 1342 (11th Cir. 2006)

(asserting that "[a] person cannot make physical

contact-particularly of an insulting or provoking nature--with

another without exerting some level of physical force"); <u>and</u>

<u>United States v. Smith</u>, 171 F.3d 617, 621 n.2  (8th Cir. 1999)

(holding Iowa common law "touching" assault met "use of physical

force" required for enhancement under 18 U.S.C. § 922(g)(9)

because any "physical contact, by necessity, requires physical

force to complete."); <u>with</u> <u>United States v. Belless</u>, 338 F.3d

1063, 1067-68 (9th Cir. 2003) (concluding that a statute

criminalizing rude, angry or insolent "unlawful touching" does

not require "physical force" sufficient to satisfy § 922(g)(9));

<u>United States v. Mathis</u>, 963 F.2d 399, 407 (D.C. Cir. 1992) (18

U.S.C. § 924(e)(2)(B)(i) does not include "felonies in which the

use of force was de minimis"). However, the holding regarding

Maine law was not unique to a particular district court at "a

particular time," <u>Bousley</u> 523 U.S. at 623; rather it was "longstanding and widespread practice" that assault convictions under Massachusetts and Maine law counted as an ACCA predicate, and any attempt to raise the issue was doomed to failure throughout the Circuit until <u>Johnson</u> changed the playing field, <u>Reed</u>, 468 U.S. at 17. Accordingly, this Court concludes that the legal basis for a challenge to the Maine assault conviction would not have been reasonably available to counsel and provides cause for the procedural default.

As discussed earlier, because Duval's assault conviction was erroneously classified as a "violent felony," Duval's sentence was enhanced by an additional, mandatory five years. This is "actual prejudice."

Duval also argues that his procedural default may be excused because he is actually innocent of the ACCA sentence. The merits of a procedurally defaulted claim may be reached if failure to address the claim would result in a "fundamental miscarriage of justice." <u>Murray v. Carrier</u>, 477 U.S. 478, 495 (1986). Actual innocence of the offense may be shown to satisfy the fundamental miscarriage of justice standard. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 322 (1995) ("[T]ying the miscarriage of justice exception to innocence . . . accommodates both the systemic interests in finality . . . and conservation of judicial resources, and the overriding individual interest in doing justice in the 'extraordinary case.'").

The Supreme Court has extended the actual innocence exception to capital sentencing, Sawyer v. Whitley, 505 U.S. 333 (1993), but has declined to answer whether the doctrine applies to noncapital sentencing errors, Dretke v. Haley, 541 U.S. 386, 393 (2004). The First Circuit has not spoken on this issue, and other circuits are split. Compare Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 171 (2d Cir. 2000) (holding that the actual innocence exception applies to a sentencing enhancement in a non-capital sentence); United States v. Maybeck, 23 F.3d 888, 893-94 (4th Cir. 1994) (same); and Mills v. Jordan, 979 F.2d 1273, 1279 (7th Cir. 1992) ("[A]ctual innocence exception applies to habitual offender proceedings . . . whether or not they involve the possibility of capital punishment"); with Embrey v. Hershberger, 131 F.3d 739, 740 (8th Cir. 1997) (en banc) (concluding that the actual innocence sentencing exception applies "only to the sentencing phase of death cases"); and United States v. Richards, 5 F.3d 1369, 1371 (10th Cir. 1993) ("A person cannot be actually innocent of a noncapital sentence . . . .").

The Court agrees with the Second, Fourth and Seventh Circuits that actual innocence applies to a sentencing enhancement. Even assuming it does, courts applying actual innocence for non-capital sentencing have noted that for purposes of the actual innocence exception, "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523

U.S. at 623. Thus, some circuits have held that "for the actual innocence exception to apply in the noncapital sentencing context, a movant must show that he is factually innocent of the conduct or underlying crime that serves as the predicate for the enhanced sentence." McKay v. United States, 657 F.3d 1190, 1198-99 (11th Cir. 2011) (involving career offender guidelines). See also United States v. Pettiford, 612 F.3d 270, 284 (4th Cir. 2010) (holding under ACCA that the actual innocence of sentence exception "applies in the context of habitual offender provisions only where the challenge to eligibility stems from factual innocence of the predicate crimes, and not from the legal classification of the predicate crimes."); cf. Poindexter v. Wash, 333 F. 3d 372, 381-82 (2d Cir. 2003) (involving misapplication as a career offender, but pointing out that there was no suggestion the crimes were not violent felonies).

Duval does not claim to be actually innocent of the crime for which he was sentenced or innocent of the predicate crimes upon which his ACCA status was based; instead, he claims to be actually innocent of being an armed career criminal. He claims that his assault does not qualify as a violent felony, making it legally ineligible for the ACCA. Some courts have rejected similar claims. The Fourth Circuit held, "This argument . . . is not cognizable as a claim of actual innocence." Pettiford, 612 F.3d at 284 (holding that § 2255 movant claiming his prior conviction for assault was not a "violent felony" did not qualify

for actual innocence exception). <u>See also</u> <u>McKay</u>, 657 F.3d at 1199
("[E]ven if the actual innocence exception were to extend to the
noncapital sentencing context . . . this exception would not
apply to [petitioner's] claim of legal innocence and thus could
not excuse his procedural default."); <u>Berry v. United States</u>, 468
Fed. Appx. 924, 925-26 (11th Cir. 2012) (rejecting actual
innocence argument in § 2255 petition where petitioner Berry did
not claim to be actually innocent of the crime for which he was
sentenced or innocent of the predicate crimes); <u>Damon v. United</u>
<u>States</u>, 2012 U.S. Dist. LEXIS 176484, at *24-30 (D. Me. Dec. 13,
2012) (same). Since Duval does not claim he is factually innocent
of the underlying assault offense, the actual innocence exception
does not apply to him under this line of cases.

Duval emphasizes that he has suffered a "fundamental
miscarriage of justice" because of an intervening change of law.
<u>Murray</u>, 477 U.S. at 495. While factual innocence is one way to
demonstrate a miscarriage of justice, it is not the only way.
Some courts have analyzed the mistaken <u>legal</u> characterization of
a predicate offense in a habitual offender provision as a
miscarriage of justice. <u>See</u> <u>Shipp</u>, 589 F.3d at 1091; <u>Narvaez</u>, 674
F.3d at 629. So, here, the court made a mistaken legal
characterization of a predicate offense, which resulted in a
miscarriage of justice, albeit without factual innocence.
However, <u>Shipp</u> and <u>Narvaez</u> do not provide Petitioner with a slam
dunk win because procedural default was not raised as an issue in

26

those cases. The parties did not cite, and the Court could not find, any cases in which a petitioner demonstrated a fundamental miscarriage of justice due to an intervening change in law regarding a mistaken legal characterization of a predicate offense under ACCA where the habeas petition was nonetheless barred by procedural default.

While the issue is complicated, and the cases are like Shipps passing in the night, the Court concludes that where a predicate offense is improperly classified as a "violent felony" under the ACCA because of an intervening change in law which created a novel claim, "cause and prejudice must yield to the imperative of correcting a fundamentally unjust incarceration." Murray, 477 U.S. at 495 (quotations omitted). The procedural default is excused as a fundamental miscarriage of justice.

**E. Statute of Limitations**

The government argues, regardless of the merits, that Duval's petition is time-barred because it was not filed within a year of any of the relevant triggering events under 28 U.S.C. § 2255(f). Petitioner argues that his claim is timely because he filed his claim within one year of the Holloway case.

A one-year statute of limitations applies to petitions under § 2255(f). That period begins to run from the latest of several events:

> (1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). By filing within a year of <u>Holloway</u>, Duval contends his petition is timely. Until the decision in <u>Holloway</u>, the First Circuit characterized any assault charge based on boilerplate charging language as a predicate offense for the ACCA, regardless of non-violent variants of assault. <u>See</u> <u>Nason</u>, 269 F.3d at 21; <u>Duval</u>, 496 F.3d at 85. This legal precedent, Duval argues, was a government-created impediment to making the instant motion. § 2255(f)(2). Petitioner cites no case law to suggest that an appellate court's own legal precedent constitutes a government-created impediment within the meaning of § 2255(f)(2). Indeed, the few courts to address the issue have found that substantive law is not an impediment created by governmental action. <u>See</u> <u>Shannon v. Newland</u>, 410 F.3d 1083, 1086-89 (9th Cir. 2005) (holding that a state court's "determination of its own substantive law in a way that leaves a convict with no meritorious federal claim" does not constitute an

"impediment" under 28 U.S.C. § 2244(d)(1)(B));[5] <u>Minter v. Beck</u>, 230 F.3d 663, 665-66 (4th Cir. 2000) (holding that change in state substantive case law does not constitute the removal of an impediment). <u>Holloway</u> did not remove an "impediment" created by governmental action.

Petitioner next argues that the <u>Holloway</u> decision changed the underlying character of his predicate assault conviction. This, he contends, is a new fact which was not previously available to him under § 2255(f)(4). However, the limitation provided for in § 2255(f)(4) requires newly discovered facts or evidence, not a change in the law. <u>See</u> <u>Anou Lo v. Endicott</u>, 506 F.3d 572, 576 (7th Cir. 2007) (holding state supreme court's clarification of law does not constitute a "factual predicate" under § 2244(d)(1)(D)); <u>E.J.R.E. v. United States</u>, 453 F.3d 1094, 1097-98 (8th Cir. 2006) (holding that a recent federal court of appeals decision was not a qualifying fact under § 2255(f)(4)); <u>Shannon</u>, 410 F.3d at 1088-89 (holding that a legal decision that does not affect petitioner's own criminal history constitutes a

---

[5] Although <u>Shannon</u> interpreted 28 U.S.C. § 2244(d)(1)(B), the "Supreme Court has interpreted the statute of limitations provisions of § 2244 and § 2255 in concert with one another." <u>Anou Lo v. Endicott</u>, 506 F.3d 572, 575 (7th Cir. 2007) (citing <u>Lackawanna County Dist. Attorney v. Coss</u>, 532 U.S. 394, 402 (2001) (plurality op. of O'Connor, J.)).

ruling of law and does not create a new factual predicate for a federal habeas claim).

Petitioner relies heavily on the Supreme Court case <u>Johnson v. United States</u> 544 U.S. 295 (2005) – not to be confused with the 2010 <u>Johnson</u> case previously discussed. In <u>Johnson</u>, the Court held that a newly vacated state conviction could serve as a fact previously undiscoverable under § 2255(f)(4) when petitioner's sentence rested upon the now-vacated predicate offense. <u>Id.</u> at 298. However the new fact in <u>Johnson</u> for purposes of § 2255(f)(4) was the state court's actual vacatur of the petitioner's underlying conviction. In contrast, <u>Holloway</u> is not a decision which invalidates or vacates Duval's prior conviction. <u>See Shannon</u>, 410 F.3d at 1088-89 ("In <u>Johnson</u>, the state-court decision . . . did not merely establish an abstract proposition of law; rather, it directly eliminated Johnson's legal status as a convict . . . In this case, by contrast, the [state court decision] was unrelated to [petitioner's] case and had no direct effect on his legal status."). Indeed, if a new legal rule by the appellate courts could trigger the one-year statute of limitations provided under § 2255(f), it would render the specific provision § 2255(f)(3) superfluous. <u>Anou Lo</u>, 506 F.3d at 576 ("To suggest . . . that any decision by any court on any issue could constitute a 'factual predicate' would swallow up the specifically delineated limitations in § 2244(d)(1)(C)."); <u>E.J.R.E.</u>, 453 F.3d at 1098 ("Congress, by limiting [§ 2255(f)(3)

to new rules made retroactive by the Supreme Court], impliedly
rejected the notion that the creation of a new right by . . .
decisions taken from the courts of appeal in all instances, could
trigger any of the limitations periods enumerated under §
2255.") The First Circuit's decision in <u>Holloway</u> is not a newly
discovered fact.

Finally, Petitioner invokes the doctrine of equitable
tolling to argue that because his case was not reviewable until
the First Circuit's <u>Holloway</u> decision, his petition is timely.
The First Circuit has held that § 2255's limitations period may
be equitably tolled. <u>Ramos-Martínez v. United States</u>, 638 F.3d
315, 322 (1st Cir. 2011). "Equitable tolling is a doctrine that
provides that in exceptional circumstances, a statute of
limitations may be extended for equitable reasons not
acknowledged in the statute creating the limitations period."
<u>Neverson v. Farquharson</u>, 366 F.3d 32, 40 (1st Cir. 2004)
(internal quotations omitted). "To preserve the usefulness of
statutes of limitations as rules of law, equitable tolling should
be invoked only 'sparingly.'" <u>Id.</u> at 42 (quoting <u>Irwin v. Dep't
of Veterans Affairs</u>, 498 U.S. 89 (1990)). "A habeas petitioner
bears the burden of establishing the basis for equitable
tolling." <u>Riva v. Ficco</u>, 615 F.3d 35, 39 (1st Cir. 2010). "To
carry this burden, the petitioner must show (1) that he has been
pursuing his rights diligently, and (2) that some extraordinary
circumstance stood in his way and prevented timely filing."

31

Ramos-Martínez, 638 F.3d at 323 (quoting Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (internal quotations omitted)).

The Government argues, with merit, that if Duval's sentence was improperly enhanced, his claim is based on the Supreme Court's decision in Johnson, which clarified the definition of "violent felony." This clarification removed certain forms of criminal conduct from the ACCA's enhancement provisions, including "offensive contact" forms of assault. Thus, the Holloway decision is inapposite since Johnson put Duval on notice that his claim was ripe. As such, if any time is tolled it should only be tolled until the Johnson decision was decided, which is still not within the § 2255 one year statute of limitations.

Petitioner counters that it was Holloway, not Johnson, that directly held that the language used in Duval's PSR was insufficient to demonstrate assault. Cf. Holloway, 630 F.3d at 254 (noting that "[a]lthough Johnson is not directly on point . . . it casts sufficient doubt on the reasoning set forth in Mangos [allowing boilerplate language]"). Duval emphasizes that he timely filed within a year of the Holloway decision.

Additionally, he argues that the First Circuit's opinion on his appeal misled him as to the appropriate time to file his habeas petition. When the panel denied Duval's appeal, it was bound by the decision in Nason, which held that all forms of assault under Maine law constituted "violent felonies" under the ACCA. 269 F.3d at 21. In upholding Duval's sentence, the court

stated, "Until such time as we revisit <u>Nason</u> <u>en banc</u>, we are bound to apply its holding . . . ." <u>Duval</u>, 496 F.3d at 84-85. Duval contends that this statement on his appeal led him to believe that he had no avenue for relief from his sentence until the First Circuit itself issued a new decision on whether all forms of assault constituted a "violent felony." Thus, he did not file a habeas petition until he discovered the First Circuit's <u>Holloway</u> opinion.[6]

Extraordinary circumstances are "circumstances beyond the litigant's control [that] have precluded [him] from promptly filing." <u>Cordle v. Guarino</u>, 428 F.3d 46, 48 (1st Cir. 2005) (citations omitted). A change in circuit law or the unavailability of helpful precedent during the limitations period is generally not considered "extraordinary circumstances." <u>See, e.g.</u>, <u>Shannon</u>, 410 F.3d at 1085, 1090 (rejecting equitable tolling based on state court decision interpreting state law "in a way potentially favorable" to petitioner's claim); <u>Anou Lo</u>, 506 F.3d at 574-75, 576 ("We have never held that a change in state substantive law constitutes an 'extraordinary circumstance' that warrants equitable tolling."); <u>Dowling v. Connell</u>, 2010 U.S. Dist. LEXIS 44397, 9-14 (E.D.N.Y. May 6, 2010) ("[A] change in a

---

[6] <u>Holloway</u> was not actually an en banc decision. However, per circuit procedure, the opinion was circulated to all active judges of the court, all of whom posed no objection to the decision. 630 F.3d at 255 n.2.

state's substantive law does not constitute extraordinary
circumstances that warrant equitable tolling."). However, courts
have found "extraordinary circumstances" where the court has made
a statement that misled a habeas petitioner, such that he files
his petition outside the limitations period. See Pliler v. Ford,
542 U.S. 225, 235 (2004) (O'Connor, J., concurring) ("[I]f the
petitioner is affirmatively misled, either by the court or by the
State, equitable tolling might well be appropriate."); Holmes v.
Spencer, 685 F.3d 51, 65 (1st Cir. 2012) ("We have noted that
equitable tolling may apply to AEDPA where a prisoner was
'actively misled' in a way that caused him to miss the filing
deadline."); Spottsville v. Terry, 476 F.3d 1241, 1245-46 (11th
Cir. 2007) (granting equitable tolling where the state court's
remark misled petitioner into filing his state petition in the
wrong court, ultimately leading to his federal petition being
untimely); Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir.
2005) ("extraordinary circumstances" include "when the State's
conduct prevents the petitioner from timely filing"); Brinson v.
Vaughn, 398 F.3d 225, 230-31 (3d Cir. 2005) (equitable tolling
warranted where a "court has misled a party regarding the steps
that the party needs to take to preserve a claim"); Alexander v.
Cockrell, 294 F.3d 626, 630 (5th Cir. 2002) (equitable tolling
appropriate where prisoner may have been misled by court's
earlier remarks that he would be able to refile in federal court
in the event that the state court denied him relief).

34

In Duval's appeal, the First Circuit stated that Duval's argument regarding the mischaracterization of his conviction as a "violent felony" would not be reconsidered until the court reversed its own prior precedent en banc. Duval is a pro se petitioner, incarcerated, with a ninth grade education, no prior legal training, and with limited access to a legal library. To be sure, these limitations are circumstances faced by many habeas petitioners and are generally not extraordinary for the purposes of equitable tolling. Holmes, 685 F.3d at 62-63. However, the "extraordinary circumstances" evaluation "depend[s] on the totality of the circumstances." Ramos-Martínez, 638 F.3d at 324. "Although any one of these factors, standing alone, may be insufficient to excuse a failure to file a timely habeas petition . . .the whole may be greater than the sum of the parts." Ramos-Martínez, 638 F.3d at 324 (internal citations omitted). Duval reasonably took the First Circuit at its word and waited until his prison research revealed Holloway. Duval Aff. ¶ 18. In this narrow circumstance, where a petitioner with limited education and resources reasonably relies on appellate court language regarding the reviewability of his case, and has diligently researched the issue, this court finds there are equitable circumstances justifying tolling. As the Court also finds that Petitioner was diligent in pursuing his rights, Petitioner's time triggering the statute of limitations will be equitably tolled until the Holloway decision.

**F. Retroactivity**

Finally, the Government argues that, even if Duval's felony is not categorized as violent under the ACCA pursuant to the <u>Johnson</u> and <u>Holloway</u> cases, these cases announce procedural rules and are, therefore, not retroactive on habeas review.

"When a decision of [the Supreme] Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." <u>Schriro v. Summerlin</u>, 542 U.S. 348, 351 (2004). However, when a conviction is final, "the rule applies only in limited circumstances. New substantive rules generally apply retroactively. . . . New rules of procedure, on the other hand, generally do not apply retroactively." <u>Id.</u> at 351-52. Thus, the key inquiry is whether the rules announced by <u>Johnson</u> and <u>Holloway</u> are substantive or procedural. "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." <u>Id.</u> at 353. "This includes decisions that narrow the scope of a criminal statute by interpreting its terms." <u>Id.</u> at 351. Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose upon him. <u>Bousley</u>, 523 U.S. at 620-21 (quoting <u>Davis</u>, 417 U.S. at 346). "In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural."

36

Schriro, 542 U.S. at 353. Procedural rules "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." Id. at 352.

The First Circuit recently declined to address whether Johnson applies retroactively on habeas review. United States v. Turner, 699 F.3d 578, 587 (1st Cir. 2012) ("Although we have no occasion to decide the Johnson issue, it may be useful to emphasize that the analysis of such a claim is by no means straightforward."). The remaining circuits to directly confront the issue have assumed, based on the government's concession, that Johnson applies retroactively. See Rozier v. United States, 701 F.3d 681, 687 (11th Cir. 2012) ("The government concedes, and we take it as a given, that the Supreme Court's Johnson decision is retroactively applicable."); Meirovitz v. United States, 688 F.3d 369, 372 (8th Cir. 2012) (Bright, J., concurring) ("[T]he government concedes that Johnson states a new rule with retroactive effect."); c.f. Kirk v. United States, 481 Fed. Appx. 249, 249 (6th Cir. 2012) ("The government acknowledges that intervening case law makes clear that [petitioner's conviction] does not qualify as a 'violent felony'. . . [and] therefore that [petitioner] has only two qualifying ACCA predicates") (citing Begay, 553 U.S. at 144-45); Shipp, 589 F.3d at 1090 (agreeing that a decision interpreting the residual clause of the "violent

37

felony" definition, <u>Chambers</u>, 555 U.S. at 122, was substantive and therefore applied retroactively). The Seventh Circuit has explicitly held that the Supreme Court's decisions in <u>Begay</u>, 553 U.S. at 137 and <u>Chambers</u>, 555 U.S. at 122, which interpreted the residual clause of the ACCA to exclude certain crimes, were retroactively applicable. <u>Narvaez</u>, 674 F.3d at 623.

When the sentencing court found Duval committed a "violent felony" pursuant to the ACCA, Duval faced "at a minimum, five years of imprisonment that the law otherwise could not impose upon him under his statute of conviction." <u>Narvaez</u>, 674 F.3d at 626. In clarifying the definition of "violent felony," the <u>Johnson</u> decision substantially narrowed Duval's exposure to a sentence of imprisonment. Thereafter, an assault that is not "capable of causing physical pain or injury to another person" may not lead to an enhancement. <u>Johnson</u>, 559 U.S. at 140. This decrease in criminal liability qualifies as a substantive rule – it alters the range of conduct the law can punish. <u>Johnson</u> may be applied retroactively to this case.

## IV.  ORDER

The motion (Docket No. 185) is **ALLOWED**.


          /s/ PATTI B. SARIS
          Patti B. Saris
          Chief United States District Judge